IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
HATTIESBURG DIVISION

VERONICA WILLIAMS                                                          PLAINTIFF

v.                                                              CIVIL ACTION # 2:06cv148-KS-MTP

BARNHILL'S BUFFET, INC., et. al                                           DEFENDANT


# MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for summary judgment [# 92] by Barnhill's Buffet, Inc.  Although the Plaintiff raises a genuine issue of fact as to the hostile work environment created by her supervisor's harassment, she delayed taking advantage of proper remedies while her employer took prompt remedial action when informed of the situation.  Because there is no genuine issue of material fact that would prevent application of the *Ellerth/Faragher* affirmative defense, the motion for summary judgment should be **granted**.


## I. FACTUAL BACKGROUND

This case involves the sexual harassment of a waitress by a restaurant manager.  Veronica Williams was hired by Barnhill's Buffet, Inc. ("Barnhill's") in Hattiesburg on June 17, 2004.  She spent one evening shadowing an experienced waitress, and was assigned her own tables the following night.  Williams was supervised by Randy Taylor, the Assistant Manager in charge of the night shift.

Williams claims that her supervisor Taylor sexually harassed her numerous times during her tenure at Barnhill's.  In addition to sporadic verbal harassment, Williams alleges that the

1

harassment culminated in three specific encounters with Taylor while she worked at the store.

The first occurred in July of 2004, when Williams claims that Taylor assaulted her in a back storage room at the restaurant. She says that Taylor "grabbed me by my apron, closed his eyes, and stuck his tongue down my mouth." Pl.'s Ex. 5 at 45 (Dec. 3, 2007). Williams says that she fled the storage room in tears after rejecting Taylor's advances.

After the storage room incident, Taylor inappropriately touched Williams a second time a few weeks later. While rolling silverware one night, Taylor allegedly grabbed her head and directed it toward his penis, stating that "I can tell by your lips that you do that well." Pl.'s Ex. 4 at 44 (Dec. 3, 2007). Instead of reporting Taylor's conduct to an another manager, Williams told lead servers Clarence Williams and Donna Jackson about the incident. She did not report the harassment to the store's management or corporate representatives.

In mid-August 2004, Williams took part in an orientation and sexual harassment workshop conducted by corporate representatives at the store. This workshop included regular store orientation as well as training on anti-harassment policies. Williams signed an acknowledgment that she understood and agreed to abide by the store's anti-harassment policies. Despite having been victimized by Taylor prior to the orientation, Williams did not inform Barnhill's corporate personnel who conducted the training what Taylor had done.

Williams says that by mid-August 2004 the overt sexual harassment by Taylor stopped, but that he began retaliating against her by altering her job duties. Williams claims that she was the only waitress required to wash the "side wall where they dump food.." Pl.'s Ex. 1 at 28 (Dec. 3, 2007). Williams also stated that Taylor routinely assigned her "the bad sections" based on customer tips. *Id.* at 19.

2

Taylor's alleged harassment culminated in an incident in late January of 2005. Williams stopped by Barnhill's to pick up her paycheck, and encountered Taylor alone in the office. When she sat down in the office, Taylor turned off the store's security camera and began assaulting her. Williams says that after Taylor "attempted to kiss me" he then "tried to pry his legs between mine" and "even tried to unbutton my pants." Pl.'s Ex. 4 at 44 (Dec. 3, 2007).

After the final incident, Williams met with store managers to resign. Williams said that she "decided to get me another job and just leave it alone." Pl.'s Ex. 1 at 22 (Dec. 3, 2007). When her store manager asked her to stay on at Barnhill's, and why she had decided to leave, Williams said she then "told him what happened in the office" with Taylor. *Id.*

After hearing her report and checking the store's security cameras, Barnhill's immediately placed Taylor on suspension and questioned all potential witnesses involved. On February 2, 2005, Taylor was terminated by Barnhill's for "misconduct involving anti-harassment policy and security policy." Pl.'s Ex. 10 at 55 (Dec. 3, 2007).

In February of 2005, Williams filed a charge with the EEOC for sex discrimination, retaliation, and harassment. She subsequently filed suit against Barnhill's, Inc. and Randy Taylor in June of 2006. Taylor was dismissed from this suit on August 1, 2007. The remaining defendant, Barnhill's, has now moved for summary judgment against Williams.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

3

R. Civ. P. 56(c). To support a motion for summary judgment, "the moving party ... [has] the burden of showing the absence of a genuine issue as to any material fact." *Burleson v. Tex. Dept. of Criminal Justice,* 393 F.3d 577, 589 (5th Cir 2004).

If the movant satisfies its initial burden, then the burden shifts back to the nonmoving party to produce evidence indicating that a genuine issue of material fact exists for each essential element of its case. *Rivera v. Houston Indep. Sch. Dist.*, 349 F.3d 244, 246-47 (5th Cir. 2003). The nonmovant is not entitled to merely rest on her pleadings, but must set forth "specific facts showing there is a genuine issue for trial." *DirecTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005). In evaluating a motion for summary judgment, the court views all evidence "in the light most favorable to the non-moving party" and "draw[s] all reasonable inferences in its favor." *Breen v. Texas A&M Univ*., 485 F.3d 325, 331 (5th Cir. 2007).

### III.  APPLICATION AND ANALYSIS

In the companion cases of *Ellerth* and *Faragher*, the Supreme Court laid out the road map for analyzing sexual harassment claims brought by employees against their employers. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). The first step in the *Ellerth/Faragher* road map is to determine whether the complaining employee has suffered a "tangible employment action." *Casiano v. AT&T Corp*., 213 F.3d 278, 283 (5th Cir. 2000). The Supreme Court has defined a tangible employment action as "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change

4

in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62 (1998).

If no tangible employment action is identified, the Court examines the claim as one of a hostile work environment.  The Court then asks "would the actions ascribed to the supervisor by the employee constitute severe or pervasive sexual harassment." *Casiano*, 213 F.3d at 278.  If so, the employer is vicariously liable unless (1) the employer exercised reasonable care to prevent and correct promptly any such sexual harassment, and (2) the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid the harm otherwise." *Id*.  Proving both prongs prevents the application of vicarious liability against the employer for the supervisor's conduct.

### 1.  Timeliness of the Plaintiff's Complaint

Before embarking on the *Ellerth/Faragher* road map, the Court must address the related issue of whether and to what extent the Plaintiff's claims are time barred.  The Defendant in this case argues that the vast majority of harassing conduct occurred more than 180 days prior to the Plaintiff's complaint with the EEOC. Def.'s Rep. Br. 3 (Dec. 14, 2007).  Yet closer analysis reveals that the Plaintiff's viable claims for a hostile work environment are timely.

Title VII mandates that a "charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C.A. § 2000e-5 (2000); *Ledbetter v. Goodyear Tire & Rubber Co., Inc.*, 127 S. Ct. 2162, 2169 (2007).  The statute effectively "precludes recovery for discrete acts of discrimination or retaliation that occur outside the statutory time period." *Celestine v. Petroleos De Venezuela SA*, 108 Fed. Appx. 180, 185 (5th

Cir. 2004).  But "if an employer engages in a series of acts each of which is intentionally

discriminatory, then a fresh violation takes place when each act is committed. *Ledbetter,* 127 S.

Ct. at 2169.  The first two discrete incidents of sexual harassment occurred prior to August 2004.

*See* Pl.'s Ex. 1 (Dec. 3, 2007).  But the Plaintiff's complaint to the EEOC was not filed until

February 4, 2005, more than 180 days after those incidents. *Id.*  Applying § 2000e-5 to her quid

pro quo harassment claims, the only actionable harassment by Taylor occurred in January of 2005,

as all actions prior to that are time barred. *Id.*

But under the alternative theory of a hostile work environment, the time limitations are

more relaxed. *Grice v. FMC Technologies, Inc.*, 216 Fed. Appx. 401, 405 (5th Cir. 2007). As the

Supreme Court instructed in *Morgan*, "[p]rovided that **an act** contributing to the claim occurs

within the filing period, the entire time period of the hostile environment may be considered by a

court for the purposes of determining liability." *National R.R. Passenger Corp. v. Morgan*, 536

U.S. 101, 117 (2002) (emphasis added).  Because Williams has claimed the repeated sexual

harassment from Taylor constituted a hostile work environment, this court "may consider all of

the acts that are alleged to have contributed to the hostile work environment, even though some

may have taken place outside of the [180 day] filing period." *E.E.O.C. v. WC&M Enterprises,*

*Inc.*, 496 F.3d 393, 398 (5th Cir. 2007).


### 2.  Quid Pro Quo Claim

Returning to the *Ellerth/Faragher* road map, Williams has alleged a quid pro quo case of

harassment against Barnhill's and Taylor.  In other words, she claims that because she refused the

unwanted sexual advances of Taylor, she suffered negative employment consequences.  Yet because she did not suffer any "tangible employment action" in retaliation, she has failed to establish a quid pro quo action that could survive summary judgment.

When an employee has suffered a "tangible employment action," their claim is classified as a quid pro quo case for Title VII purposes. *Wyatt v. Hunter Plywood Co, Inc.*, 297 F.3d 405, 409 (5th Cir. 2002).  A plaintiff alleging quid pro quo harassment must show both that (1) she suffered a tangible employment action and (2) the tangible employment action resulted from her acceptance or rejection of her supervisor's alleged sexual advances. *La Day v. Catalyst Tech., Inc.*, 302 F.3d 474, 481 (5th Cir. 2002).  In other words, in order to survive summary judgment, Williams must demonstrate a genuine issue of material fact regarding whether Randy Taylor, her alleged harasser, took a tangible employment action against her because she rejected his sexual advances. *See Russell v. University of Texas of Permian Basin*, 234 Fed. Appx. 195, 201 (5th Cir. 2007).

The Supreme Court has defined a "tangible employment action" as "a significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998).  The Fifth Circuit has previously held that an employee did not suffer a tangible employment action when her supervisor "changed her work schedule and asked her to perform tasks which she had not previously been asked to perform." *Watts v. Kroger Co.*, 170 F.3d 505, 510 (5th Cir. 1999).  After reporting the unwanted sexual advances of her supervisor, the plaintiff in *Watts* received less favorable work assignments and her schedule was rearranged, interfering with prior commitments known to her boss.  Considering

7

whether this amounted to a tangible employment action, the appeals court found that "[s]imply changing one's work schedule is not a change in her employment status. Neither is expanding the duties of one's job as a member of the produce department to include mopping the floor, cleaning the chrome in the produce department, and requiring her to check with her supervisor before taking breaks." *Id*.

The adverse consequences suffered by Williams are similar to those rejected as insufficient in *Watts*. Although Williams was asked to perform certain janitorial tasks, she was not assigned to a job with significantly different responsibilities. The job of waitress included limited janitorial duties, and the allegedly unfair section assignments fail to rise to the level of tangible employment actions.

### 3. Constructive Discharge Claim

In her reply to the Defendant's motion to dismiss, the Plaintiff raises for the first time an allegation that she was constructively discharged from Barnhill's, and hence suffered a tangible employment action. Pl.'s Res. Br. at 12 (Dec. 3, 2007). Although she did not raise the issue of constructive discharge until her response to the motion to dismiss, the Court will consider this claim as an additional allegation of quid pro quo harassment. The Defendant responds that this claim should be barred because it was not raised before the EEOC and hence not part of the EEOC's investigation. Def. Reb. Br. 5 (Dec. 14, 2007).[1]

---

[1] The Fifth Circuit has held that "[t]he scope of inquiry at a court hearing in a Title VII action is not limited to the charge brought before the EEOC; it is limited to the scope of the EEOC investigation that reasonably can be expected to result from the charge." *O'Neal v. Roadway Exp.*, 181 Fed. Appx. 417, 419-20 (5th Cir. 2006).

To succeed on a claim of constructive discharge, an employee "must offer evidence that the employer made the employee's working conditions so intolerable that a reasonable employee would feel compelled to resign." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000). The victim's decision to resign "must have been reasonable under all the circumstances." *Barrow v. New Orleans Steamship Ass'n*, 10 F.3d 292, 297 (5th Cir. 1994). The reasonableness of a plaintiff's decision is measured by an objective test. *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 772 (5th Cir. 2002).

Even if the Court allows Williams to raise the issue of constructive discharge, the evidence in the record does not raise a genuine issue of fact that her decision to resign was reasonable. The reasonableness of a plaintiff's decision to resign is examined in light of the actions of their employer after the abuse is disclosed. As the Fifth Circuit has noted, once an employer takes reasonable steps to correct sexual harassment after being notified of the problem, the employee has "an obligation to give the company another opportunity to remedy the problem before deciding that she could not work there anymore." *Woods v. Delta Beverage Group, Inc.*, 274 F.3d 295, 301 (5th Cir. 2001). If the employer takes quick remedial action to end the harassment, "[t]his factor alone is fatal" to a plaintiff's claim of constructive discharge. *Webb v. Cardiothoracic Surgery Associates of North Texas, P.A.*, 139 F.3d 532, 539-40 (5th Cir. 1998).

Because her decision to leave Barnhill's fails the objective test of reasonableness, the Plaintiff's claim of constructive discharge cannot survive summary judgment. In her briefing, she argues that "[a]ny reasonable victim of sexual harassment would quit if she was interrogated when she reported sexual harassment." Pl.'s Rep. Br. 12 (Dec. 3, 2007). But Williams, in fact, had chosen to leave Barnhill's before she even reported the actions of Taylor to store management.

Pl.'s Ex. 1 at 22 (Dec. 3, 2007).  More importantly, it fails the test of objective reasonableness for

constructive discharge if an employee resigns just as their employer begins investigating their

complaint.  As discussed infra, Barnhill's quickly and decisively dealt with the incident, ensuring

Williams would never have to work with Taylor again.  Williams was certainly free to leave

Barnhill's because of the incident, but she has not raised a genuine issue of fact that she was

constructively discharged by their behavior.


### 4.  Hostile Work Environment Claim

Moving to the second part of the *Ellerth/Faragher* road map, Williams additionally alleges

a claim of sexual harassment based on working environment.  In other words, Williams claims

that Taylor's advances created a hostile and abusive work environment that altered the conditions

of her employment.  Based on the evidence submitted, Williams has successfully raised a genuine

issue of fact that Taylor's actions created a hostile work environment sufficient to survive

summary judgment.

The plaintiff in a hostile work environment claim must establish that: (1) she belongs to a

protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was

based on sex; (4) the harassment affected a term, condition or privilege of employment; and (5)

the employer knew or should have known of the harassment and failed to take remedial action.

*Septimus v. University of Houston*, 399 F.3d 601, 611 (5th Cir. 2005).  The Supreme Court has

stated that Title VII provides a legal remedy to victims who establish that the abusive conduct was

severe or pervasive. *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986).[2]

To be actionable, the severe or pervasive harassment must "alter the conditions of [the plaintiff's] employment and create an abusive working environment." *McCullough v. Kirkum*, 212 Fed. Appx. 281, 284 (5th Cir. 2006). In determining whether an environment is "hostile" or "abusive" within the meaning of Title VII, courts look at the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift*, 510 U.S. 17, 23 (1993).[3] Actionable harassment must be "both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so." *Shepherd v. Comptroller of Pub. Accounts of State of Texas*, 168 F.3d 871, 874 (5th Cir. 1999). A single egregious incident can sufficiently alter the terms and conditions of employment to create a hostile work environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The determination that the working environment is hostile or abusive "can be made only by looking at the totality of circumstances. *Harris*, 510 U.S. at 23.

---

[2]The Fifth Circuit recently overturned a district court who required that reported abusive conduct be both severe and pervasive in order to be actionable because that standard "impose[d] a more stringent burden on the plaintiff than required by law." *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 435 (5th Cir. 2005).

[3]The Fifth Circuit has rejected numerous cases where the conduct was merely offensive and not sufficient to be actionable. *See, e.g.*, *Wilkinson v. Potter*, 236 Fed. Appx. 892 (5th Cir. 2007) (holding that touching employee briefly and lingering in her work area were not so threatening or humiliating as to prevent her from succeeding in the workplace). In *Shepard*, the Fifth Circuit found the cumulative effect of employer: (1) telling employee"your elbows are the same color as your nipples;" (2) simulating looking under employee's dress and attempting to look down her clothing several times; (3) employer touching her on several occasions by "rubbing one of his hands from her shoulder down to her wrist;" and (4) employer patting his lap and remarking "here's your seat" while the plaintiff was searching for a place to sit were all insufficient to create a hostile or abusive work environment. *See Shepherd v. Comptroller of Public Accounts of State of Texas*, 168 F.3d 871, 872 (5th Cir. 1999).

The totality of evidence in the summary judgment record raises a genuine issue of fact that Williams was the victim of severe or pervasive sexual harassment that altered the conditions of her employment and created a hostile working environment.  This evidence includes more than mere comments and mildly inappropriate touching.  In the summer of 2004, Taylor allegedly placed his hands on Williams twice–first to attempt to kiss her and second to push her head toward his pelvis. Pl.'s Rep. Br. 4 (Dec. 3, 2007).  Then in January 2005, Taylor is alleged to have switched off the normal security cameras in an attempt to undress Williams and force himself upon her. *Id.* at 5. Taking those allegations in the light most favorable to the respondent, Williams has raised a genuine issue of material fact that Taylor's severe or pervasive sexual harassment altered the conditions of her employment and created a hostile work environment.

## 5.  Affirmative Defenses

Because Williams has failed to show a tangible employment action, the Court must consider the final part of the *Ellerth/Faragher* road map.  When a plaintiff is reduced to relying solely on the hostile work environment theory for liability, their employer is permitted to use a specialized affirmative defense to escape liability. *Ellerth*, 524 U.S. at 765; *Faragher*, 524 U.S. at 805, 807.  The *Ellerth/Faragher* affirmative defense allows an employer to escape liability if the employer can show that it "exercised reasonable care to prevent and correct promptly any such sexual harassment" and that "the employee unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid harm otherwise." *Casiano v. AT&T Corp.*, 213 F.3d 278, 284 (5th Cir. 2000).

A.    Barnhill's exercised reasonable care to prevent and correct sexual harassment against employees

The actions of Barnhill's after Williams reported Taylor's conduct easily fulfill their duty to prevent and correct promptly any complaints of sexual harassment by an employee.  To satisfy the first prong of the defense, Barnhill's must show that "once informed of allegations of sexual harassment, [it took] prompt remedial action to protect the claimant." *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 402 (5th Cir.1993).  This prompt remedial action must have been "reasonably calculated to end the harassment." *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615-16 (5th Cir.1999).  Barnhill's may remain liable "despite having taken remedial steps if [Williams] can establish that [Barnhills's] response was not reasonably calculated to halt the harassment." *Id.* (internal citations omitted).

Despite the severity and pervasiveness of harassment allegedly suffered by Williams, the uncontested record indicates that Barnhill's exercised reasonable care to prevent and correct the sexual harassment once it became aware of the situation.  After Williams reported the conduct, Barnhill's immediately suspended Taylor pending the results of an internal investigation.  Barnhill's began their investigation that same day, interviewing several witnesses and reviewing tapes from store security cameras.  After being interviewed and permitted to view the security tape, Taylor was terminated within days of Williams's complaint.  Barnhill's officials made clear to Williams that she would never be asked to work with Taylor again, and they informed her that Taylor had been terminated.[4]

---

[4]Even when confronted with employers that were significantly less responsive, the Fifth Circuit has permitted application of the affirmative defense.  In *Skidmore*, the appeals court found an employer took "prompt remedial action" even though the supervisor did not investigate the employee's allegations for months until she filed

The actions of Barnhill's represent what the Fifth Circuit has described as "what a company ought to do when faced with allegations that an employee has been subjected to sexual harassment." *Carmon v. Lubrizol Corp.*, 17 F.3d 791, 795 (5th Cir. 1994).  The entire investigation was wrapped up within days of when it started, and the actions taken by Barnhill's insured that Taylor could not and would not harass Williams again.  Though the statute does not tolerate abusive or hostile work environments, "that fact does not transform Title VII into a strict liability statute for employers." *Nash v. Electrospace Sys., Inc.,* 9 F.3d 401, 404 (5th Cir.1993).  Barnhill's actions in this case demonstrate "a model of prompt, sensitive employer handling of these very traumatic cases." *Id.* at 404.  Based on the summary judgment evidence, the Court finds that Barnhill's actions "constituted prompt remedial action as a matter of law." *See Hirras v. National R.R. Corp.*, 95 F.3d 396, 400 (5th Cir. 1996)

B.      Williams unreasonably failed to take advantage of preventative and corrective
         opportunities to avert the harassment

The evidence in the record also indicates that Williams unreasonably failed to take advantage of the preventative and corrective measures put into place by her employer.  When she went through mandatory training and orientation in mid-August 2004, Williams viewed an educational video about sexual harassment in the workplace.  Williams also signed a form where she acknowledged that she received a copy of and understood Barnhill's sexual harassment policy. Perhaps most importantly, Williams had the opportunity to meet personally with Barnhill's

---

an EEOC complaint, did not reprimand the offender, and did not follow-up to ensure that harassment had ceased. *Skidmore v. Precision Printing & Packaging, Inc.*, 188 F.3d 606, 615 (5th Cir. 1999).

corporate representatives following her training on sexual harassment.  Already having allegedly suffered harassment from Taylor, Williams had just been informed of the company's policies on sexual harassment and her duty to report if she confronted it.  Yet she unreasonably failed to report the incident until January of 2005.  Although Williams did tell coworkers about Taylor's harassment, informal complaints like these have been held insufficient to give the entity an opportunity to correct the problem. *See McCullough v. Kirkum*, 212 Fed. Appx. 281, 284 (5th Cir. 2006).

The Fifth Circuit has repeatedly found this prong of the defense satisfied when would-be plaintiffs fail to avail themselves of the anti-discrimination tools available in their workplace. *See, e.g.*, *Casiano v. AT&T Corp.*, 213 F.3d 278, 287 (5th Cir. 2000); *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir. 1999).  In *Scrivner*, the appeals court used the defense to block the claim of a teacher who was harassed by her principal because the teacher failed to avail herself of the of the district's anti-harassment remedies. *Id*. The court found she was unable to hold her employer liable because "[f]rom the summer of 1995 to March 1996, [she] never complained about [her principal's] increasingly offensive behavior." *Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 971 (5th Cir. 1999).

Though Williams alludes to the generalized fear that she would be retaliated against for reporting the harassment, this alone does not excuse her failure to report.  To avoid dismissal on that ground, the victim must have reasons for not reporting that "are substantial and based upon objective evidence that some significant retaliation will take place." *Harper v. City of Jackson Municipal Sch. Dist.*, 149 Fed. Appx. 295, 302 (5th Cir. 2005) (internal citations omitted).  Where, as here, the victim "failed to substantiate her fears" in the summary judgment record,

15

those fears are legally insufficient to bar application of Barnhill's affirmative defense. *Id*.

## IV. CONCLUSION

Veronica Williams has raised a genuine issue of fact as to whether she was the victim of severe or pervasive sexual harassment by her supervisor at Barnhill's. Although this harassment likely altered the conditions of her employment and created a hostile working environment, Williams did not suffer a tangible employment action after she rebuffed her supervisor's advances. Yet she failed to properly report the actions of her supervisor to the store manager or corporate offices. After the third incident of unwanted attention, Williams left her job at Barnhill's on her own accord, before the store could remedy the situation and create a more suitable work environment. For its part, Barnhill's acted reasonably and decisively once it learned of the abuse, and insured that Williams could never be harassed by this supervisor again. Because she failed to take advantage of reporting remedies, and because Barnhill's acted reasonably to end the harassment, the *Ellerth/Faragher* affirmative defense prevents Williams from holding Barnhill's liable for the actions of her supervisor. And because she suffered no tangible employment action, Williams has failed to raise any genuine issues of material fact to avoid summary judgment.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the motion for summary judgment [# 92] by Barnhill's Buffet, Inc. is **granted**.

SO ORDERED AND ADJUDGED on this, the 8th day of January, 2007.

*s/Keith Starrett*

United States District Judge

16